IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 13, 2014

## WISE NORTH SHORE PROPERTIES, LLC v.
## 3 DAUGHTERS MEDIA, INC., ET AL.

**Appeal from the Chancery Court for Hamilton County**
No. 11-0535      W. Frank Brown, Chancellor

_____

**No. E2013-01953-COA-R3-CV-FILED-JUNE 23, 2014**

_____

Wise North Shore Properties, LLC ("Plaintiff") appeals the order of the Chancery Court for Hamilton County ("the Trial Court") dismissing Plaintiff's claims against Gary E. Burns. We find and hold as a matter of law that Mr. Burns executed the contract at issue in this case both in his capacity as CEO of 3 Daughters Media, Inc. and in his individual capacity personally guaranteeing the contract. We, therefore, reverse the Trial Court's June 18, 2013 order dismissing Plaintiff's claims against Mr. Burns.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed
Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Susie Lodico and McKinley S. Lundy, Jr., Chattanooga, Tennessee, for the appellant, Wise North Shore Properties, LLC.

Timothy L. Mickel, Chattanooga, Tennessee, for the appellee, Gary E. Burns.

**OPINION**

**Background**

Plaintiff sued 3 Daughters Media, Inc. and Mr. Burns alleging that the defendants had breached a contract to lease property located in Hamilton County, Tennessee ("the Contract"). In pertinent part, Plaintiff alleged that in addition to executing the Contract on behalf of 3 Daughters Media, Inc., Mr. Burns acting in his individual capacity executed a personal guaranty of the Contract.

In pertinent part, the Contract contains a signature line preceded by the word "by." This signature line was executed by Mr. Burns as "Gary E. Burns, CEO." Directly below this first signature line is a second signature line immediately preceded by the words "PERSONALLY GUARANTEED BY:" and followed by the words "3 Daughters Media Inc." Mr. Burns also executed this second signature line as "Gary E. Burns CEO." Additionally, paragraph 33 of the Contract states, in part: "The following exhibits, if any, have been made a part of this lease before the parties' execution hereof: **Exhibit "A" – Drawing of Leased Space; Exhibit "B" – Rent Schedule of Monthly and Annual Rents and Exhibit "C" – Personal Guarantee.**" (emphasis in original). The Trial Court found that the parties agreed that Exhibit "C" did not exist.

Plaintiff filed a motion for partial judgment on the pleadings on the issue of whether Mr. Burns had personally guaranteed the Contract. Defendants filed a cross-motion for partial judgment on the pleadings. After a hearing the Trial Court entered an order on June 18, 2013 granting defendants' motion for partial judgment after finding and holding that as a matter of law the Contract[1] "does not evidence a clear intent to impose individual liability upon Defendant, Gary E. Burns."

On August 1, 2013 the Trial Court entered a Consent Judgment finding and holding that the parties had agreed as to the liability of 3 Daughters Media, Inc. for breach of the Contract and as to the amount of damages. Plaintiff then appealed to this Court the dismissal of its claims against Mr. Burns.

**Discussion**

Although not stated exactly as such, Plaintiff raises one issue on appeal: whether the Trial Court erred in dismissing Plaintiff's claims against Mr. Burns. "[A] motion for judgment on the pleadings is 'in effect a motion to dismiss for failure to state a claim upon which relief can be granted.'" *King v. Betts*, 354 S.W.3d 691, 709 (Tenn. 2011) (citations omitted). Our Supreme Court has instructed:

> In reviewing a trial court's ruling on a motion for judgment on the pleadings, we must accept as true "all well-pleaded facts and all reasonable inferences drawn therefrom" alleged by the party opposing the motion. *McClenahan v. Cooley*, 806 S.W.2d 767, 769 (Tenn. 1991). In addition, "[c]onclusions of law

---

[1]Plaintiff attached a copy of the Contract as an exhibit to its complaint. As such, pursuant to Tenn. R. Civ. P. 10.03, the Contract is to be considered "a part of the pleading for all purposes." Tenn. R. Civ. P. 10.03.

are not admitted nor should judgment on the pleadings be granted unless the moving party is clearly entitled to judgment." *Id*.

*Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d 466, 470 (Tenn. 2004).

The issue before us concerns whether Mr. Burns personally guaranteed the Contract by executing the second signature line in the Contract. Our Supreme Court has instructed:

> The Statute of Frauds requires that a contract to pay the debts of another must be signed by the guarantor. *See* Tenn. Code Ann. § 29-2-101(a)(2) (2000). In most cases, a representative who signs a contract is not personally bound to the contract. *See Dominion Bank of Middle Tenn. v. Crane*, 843 S.W.2d 14, 19 (Tenn. Ct. App. 1992); *Anderson v. Davis*, 34 Tenn. App. 116, 234 S.W.2d 368, 369-70 (Tenn. Ct. App. 1950). A representative who signs a contract may be personally bound, however, when the clear intent of the contract is to bind the representative. *See Lazarov v. Klyce*, 195 Tenn. 27, 255 S.W.2d 11, 14 (1953) (citing *Pope v. Landy*, 1 A.2d 589 (Del. Super. Ct. 1938)) ("Whether or not a particular contract shows a clear intent that one of the parties was contracting as an individual or in a representative capacity, must be determined *from the contract itself*.").

> When we interpret a contract, our role is to ascertain the intention of the parties. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). The intention of the parties is based on the ordinary meaning of the language contained within the four corners of the contract. *Kiser v. Wolfe*, 353 S.W.3d 741, 747 (Tenn. 2011); *see Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 889-90 (Tenn. 2002). The interpretation of a contract is a matter of law, which we review de novo with no presumption of correctness. *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006).

*84 Lumber Co. v. Smith*, 356 S.W.3d 380, 382-83 (Tenn. 2011).

Mr. Burns cites in his brief on appeal to several cases which pre-date our Supreme Court's decision in *84 Lumber Co.* with regard to the general rule regarding the signature of a corporate representative. Our Supreme Court, however, gave clear guidance when it stated in *84 Lumber Co.* that "[a] representative who signs a contract may be personally bound, however, when the clear intent of the contract is to bind the representative," and instructed that the clear intent of the parties must be determined from the contract itself. *Id*. at 382. Thus, we look not only at the general rule, but also to the clear

intent of the parties as gleaned from the Contract itself. In his brief on appeal Mr. Burns acknowledges that: "The Tennessee Supreme Court case of *84 Lumber* and its requirement of ***clear intent*** is the controlling authority on what is required to establish individual liability." (emphasis in original)[2].

The Contract in the case now before us was executed by Mr. Burns in two separate places. The first signature line executed by Mr. Burns clearly was intended by the parties to bind 3 Daughters Media, Inc. to the Contract. The second signature line executed by Mr. Burns, which appears directly below the first signature line, is preceded by the words "PERSONALLY GUARANTEED BY:." These words, "PERSONALLY GUARANTEED BY:," are clear and unambiguous and mean exactly what they say, that the signatory, whomever it may be, is personally guaranteeing the Contract.

Mr. Burns argues in his brief on appeal that 3 Daughters Media, Inc. was the entity personally guaranteeing the Contract. As this Court noted in *Cone Oil Co. v. Green*, however, the "principal [sic] [that when an officer signs in his official capacity only the corporation is bound] applies when the signature is upon a principal obligation of the corporation and not a collateral guaranty of the obligation of the corporation. . . . [As] a guaranty of one's own obligation is an exercise in futility." *Cone Oil Co. v. Green*, 669 S.W.2d 662, 664 (Tenn. Ct. App. 1983). To accept Mr. Burn's argument that 3 Daughters Media, Inc. was guaranteeing its own contractual obligations would "render the guaranty of no effect." *Amber Brazilian Export Resources, Inc. v. Crown Laboratories, Inc.*, No. E2011-01616-COA-R3-CV, 2012 Tenn App. LEXIS 183, at *7 (Tenn. Ct. App. March 21, 2012), *Rule 11 appl. perm. appeal denied Aug. 15, 2012*. Such a result would be illogical. The corporation, 3 Daughters Media, Inc. already was bound to the Contract by virtue of Mr. Burns' signature on the first signature line. Under Mr. Burns' position, his second signature

_____

[2]Mr. Burns makes this statement after asserting that cases cited by Plaintiff that pre-date *84 Lumber* are not controlling even though Mr. Burns also cites to cases which pre-date *84 Lumber*. Furthermore, Mr. Burns makes this statement in an attempt to refute arguments relying upon the proposition stated in *Cone Oil Co.* that "a guaranty of one's own obligation is an exercise in futility." *Cone Oil Co. v. Green*, 669 S.W.2d 662, 664 (Tenn. Ct. App. 1983). Mr. Burns asserts that in *84 Lumber* our Supreme Court chose not to follow "the logic set forth by the Court of Appeals in *Cone Oil* . . . ." We disagree with Mr. Burns' implicit assertion that our Supreme Court's decision in *84 Lumber* nullifies this specific proposition. Our Supreme Court did nothing in *84 Lumber* which overruled, abrogated, superseded or changed the general proposition that "a guaranty of one's own obligation is an exercise in futility." *Cone Oil Co.*, 669 S.W.2d at 664. Nor is our Supreme Court's guidance with regard to analyzing the issue now before us in any way at odds with the general proposition that "a guaranty of one's own obligation is an exercise in futility." *Cone Oil Co.*, 669 S.W.2d at 664. For support, see this Court's Opinion in *Amber Brazilian Export Resources, Inc. v. Crown Laboratories, Inc.*, No. E2011-01616-COA-R3-CV, 2012 Tenn. App. LEXIS 183, at *7 (Tenn. Ct. App. March 21, 2012), *Rule 11 appl. perm. appeal denied Aug. 15, 2012* (stating that to accept the argument that the corporation guaranteed its own debt would render the guaranty of no effect and would not be logical.).

to the Contract meant and accomplished nothing. We do not believe that the parties intended the second signature line of the Contract to have no purpose or effect.

Mr. Burns also argues in his brief on appeal that the fact that there is no Exhibit "C" to the Contract precludes a finding that he personally guaranteed the Contract. With regard to Exhibit "C," the Contract itself provides that the specified "exhibits, *if any*, have been made a part of this lease before the parties' execution hereof . . . ." (emphasis added). The fact that Exhibit "C" was not made a part of the Contract, however, is not dispositive of the issue before us. We must look at all of "the language contained within the four corners of the contract," when interpreting the Contract. *84 Lumber Co.*, 356 S.W.3d at 383. The language contained in the Contract with regard to Exhibit "C" states only that if Exhibit "C" exists, it was made a part of the Contract prior to execution by the parties. The Contract does not state that Exhibit "C" does exist. Rather, it merely delineates what the import of such an exhibit would be if it did exist. The parties agree that Exhibit "C" does not exist. Furthermore, as discussed above, other language contained in the Contract does support the finding that the clear intent of the parties was that Mr. Burns was personally guaranteeing the Contract. As such, this argument is without merit.

The clear intent of the parties as gleaned from the ordinary meaning of the plain language contained within the four corners of the Contract is that Mr. Burns personally guaranteed the Contract when he executed the second signature line of the Contract. As such, we reverse the Trial Court's June 18, 2013 order dismissing Plaintiff's claims against Mr. Burns and remand this case for further proceedings consistent with this Opinion.

## Conclusion

The judgment of the Trial Court is reversed, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed against the appellee, Gary E. Burns.

_____
D. MICHAEL SWINEY, JUDGE