IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 10, 2024 Session

## RODNEY DEWAYNE BARRENTINE v. JIMMY J. KINSLER

**Appeal from the Chancery Court for Hancock County**
**No. 21-10018        Douglas T. Jenkins, Chancellor**

————————————————————

**No. E2023-01274-COA-R3-CV**

————————————————————

This is an appeal from a bench trial wherein the trial court found that the defendant had materially breached a contract for the sale of real property by failing to complete the sale. The trial court further found that although the plaintiff had also breached the contract by failing to provide sufficient proof of funds within the contractual time frame, such breach was not material and the defendant was still obligated to perform his contractual duties. The trial court entered an order directing the defendant's specific performance of the contract and awarding to the plaintiff reasonable attorney's fees and costs, as provided for in the parties' contract. The defendant has appealed. Discerning no reversible error, we affirm the trial court's judgment. Pursuant to the parties' contract, we grant the plaintiff's request for reasonable attorney's fees on appeal. We remand the case to the trial court for enforcement of the contract and for a determination of the plaintiff's reasonable attorney's fees and costs incurred on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Adam Strachn, Knoxville, Tennessee, for the appellant, Jimmy J. Kinsler.

Matthew A. Grossman and Michael A. C. Lee, Knoxville, Tennessee, for the appellee, Rodney Dewayne Barrentine.

**OPINION**

I.  Factual and Procedural Background

On June 8, 2021, the plaintiff, Rodney D. Barrentine, filed a complaint in the Hancock County Chancery Court ("trial court") against the defendant, Jimmy J. Kinsler. In his complaint, Mr. Barrentine averred that in February 2021, he and Mr. Kinsler had entered into a "Lot/Land Purchase and Sale Agreement" ("the Agreement") concerning a parcel of unimproved real property ("the Property") located in Hancock County.  Mr. Barrentine stated that in accordance with the terms of the Agreement, he had tendered $1,000.00 in earnest money and had provided proof of funds for the purchase.  However, according to Mr. Barrentine, Mr. Kinsler had refused to accept the funds or convey the Property pursuant to the Agreement.  In his complaint, Mr. Barrentine averred that he was ready, willing, and able to pay the purchase price and requested that the court order specific performance of the Agreement.

According to the terms of the Agreement, attached as an exhibit to the complaint, the purchase price of the Property was $155,000.00.  The Agreement stated that it was not subject to a financing contingency and that Mr. Barrentine was to "furnish proof of available funds to close in the following manner:  Equity Line on current home (e.g. bank statement, Lender's commitment letter) within five (5) days after Binding Agreement Date."  In addition, if Mr. Barrentine failed to furnish such proof, Mr. Kinsler could "make [a] written demand for compliance via the Notification form or equivalent written notice," and Mr. Barrentine would then have two days to furnish proof or Mr. Kinsler's obligation to sell the Property would be terminated.  The Agreement further provided that Mr. Barrentine was to pay $1,000.00 earnest money within seven days of the date of execution.

Mr. Kinsler filed an answer on July 16, 2021, denying that he had timely received Mr. Barrentine's earnest money.  Furthermore, Mr. Kinsler denied that he had refused to accept Mr. Barrentine's tender of funds.  Mr. Kinsler therefore asked the trial court to dismiss the complaint.

Following the parties' competing and unsuccessful summary judgment motions, this matter proceeded to trial on July 19, 2023.  The trial court heard testimony from both parties, as well as from Tammy Clark, a legal assistant at the law firm that was to have handled the closing; Daniel Zydel, Mr. Barrentine's former attorney; and Gary Hicks, a real estate broker providing expert testimony on real estate transactions.  Additionally, Mr. Barrentine's attorney entered into evidence the deposition of Mr. Kinsler's real estate agent, Leslie Dabe.

On August 15, 2023, the trial court entered a final judgment, wherein the court found that closing on the sale of the Property had been scheduled for March 12, 2021.  The court found that no later than March 11, 2021, Mr. Kinsler had "unequivocally announced" to

his real estate broker and two employees of the closing firm that he refused to close and convey the Property to Mr. Barrentine.[1] The court determined that Mr. Barrentine did not breach the Agreement with respect to his payment of earnest money. The court further determined that Mr. Barrentine's failure to include his name on his February 19, 2021 proof-of-funds document—a defect that Mr. Kinsler argued amounted to a breach of the Agreement—was a non-material breach. The court therefore concluded that Mr. Barrentine had not committed a material breach of the Agreement that would excuse Mr. Kinsler's performance of his contractual obligations.

The trial court further concluded that Mr. Kinsler had materially breached the Agreement by refusing to proceed with closing. The court therefore ordered specific performance and directed Mr. Kinsler to convey the Property to Mr. Barrentine via general warranty deed. The court additionally awarded attorney's fees to Mr. Barrentine in the amount of $5,000.00 with such sum to be deducted from the purchase price. By separate order entered September 11, 2023, the trial court awarded to Mr. Barrentine discretionary costs in the amount of $2,163.25. Meanwhile, Mr. Kinsler filed a timely notice of appeal on September 8, 2023.

## II. Issues Presented

Mr. Kinsler presents the following issue for this Court's review, which we have restated slightly:

1. Whether the trial court erred by ruling that Mr. Barrentine's failure to provide proof of available funds was not a material breach of the Agreement's requirements.

Mr. Barrentine restates the main issue and raises additional issues as follows:

2. Whether the evidence supports the trial court's conclusion that Mr. Kinsler committed the first and only material breach of the Agreement.

3. Whether the trial court erred in finding that the proof of funds provided by Mr. Barrentine was a breach of the Agreement notwithstanding the court's finding that any such breach was immaterial.

4. Whether Mr. Barrentine is entitled to recover his reasonable attorney's fees and costs resulting from this appeal.

---

[1] In the trial court's oral pronouncement following trial, the court also stated that on February 23, 2021, Mr. Kinsler had "expressly disavowed the contract" to Ms. Dabe, his real estate broker.

## III. Standard of Review

Our review of the trial court's judgment following a non-jury trial is *de novo* upon the record with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204 (Tenn. 2012). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006) (citing *Rawlings* v. *John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001)). We review the trial court's conclusions of law, including its interpretation of a written agreement, *de novo* with no presumption of correctness. *See Ray Bell Constr. Co., Inc. v. State, Tenn. Dep't of Transp.*, 356 S.W.3d 384, 386 (Tenn. 2011); *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

## IV. Breach of the Agreement

Mr. Kinsler contends that the trial court erred by finding that Mr. Barrentine's breach of the Agreement was not material and by instead finding that Mr. Kinsler's refusal to close on the Property was the first and only material breach. Mr. Kinsler argues that Mr. Barrentine committed the first material breach by failing to provide sufficient proof of funds within the contractual time period and that this breach excused Mr. Kinsler's duty to perform.[2] Conversely, Mr. Barrentine urges that he delivered proof of funds to Mr. Kinsler's agent within the time period specified in the Agreement. Mr. Barrentine further contends that he fulfilled a subsequent request for sufficient proof within the supplemental time period specified in the Agreement. Upon thorough review of the record and applicable authorities, we agree with the trial court's determination that any breach by Mr. Barrentine was non-material, such that Mr. Kinsler's failure to close the sale was the only material breach of the Agreement.

### A. First Material Breach

In order to determine whether Mr. Barrentine's alleged breach of the Agreement was material, we are required to interpret the terms of the Agreement. Our Supreme Court has explained the principles of contract interpretation as follows:

---

[2] Although Mr. Kinsler originally claimed that Mr. Barrentine had failed to pay the earnest money deposit on time, which he averred was also a material breach, Mr. Kinsler has abandoned that argument on appeal.

> "When resolving disputes concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language." *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). If a contract's language is clear and unambiguous, then the literal meaning of the language controls the outcome of the contract dispute. *See Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002). Additionally, "all provisions in the contract should be construed in harmony with each other, if possible, to promote consistency and to avoid repugnancy between the various provisions of a single contract." *Guiliano*, 995 S.W.2d at 95.

*Teter v. Republic Parking Sys., Inc.*, 181 S.W.3d 330, 342 (Tenn. 2005); *see Bynum v. Sampson*, 605 S.W.3d 173, 180 (Tenn. Ct. App. 2020) (explaining that contract interpretation requires determination of the parties' intent based on the "ordinary meaning of the language contained within the four corners of the contract" (citing *84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011))).

To succeed on a breach of contract claim, a party must establish three elements: "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *Bynum*, 605 S.W.3d at 180 (quoting *ARC Lifemed, Inc. v. AMC-Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)). Here, the parties' overarching dispute pertains to the second element—a nonperformance that amounts to a breach of the Agreement. If a party's nonperformance amounts to a breach of contract but the breach "was slight or minor, as opposed to material or substantial, the nonbreaching party is not relieved of his or her duty of performance, although he or she may recover damages for the breach." *Anil Constr. Inc. v. McCollum*, No. W2014-01979-COA-R3-CV, 2015 WL 4274109, at *12 (Tenn. Ct. App. July 15, 2015) (quoting *Peoples Bank v. Lacy*, No. E2011-01489-COA-R3-CV, 2012 WL 1664008, at *5 (Tenn. Ct. App. May 14, 2012)); *see M & M Elec. Contractor, Inc. v. Cumberland Elec. Membership Corp.*, 529 S.W.3d 413, 423 (Tenn. Ct. App. 2016). When a party's nonperformance amounts to a material breach, however, the non-breaching party is relieved of its contractual obligations. *M & M Elec. Contractor, Inc.*, 529 S.W.3d at 423 (citing *DePasquale v. Chamberlain*, 282 S.W.3d 47, 53 (Tenn. Ct. App. 2008)).

As this Court has previously instructed, we are to consider the following factors to determine whether a breach is material:

(a)    the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b)    the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(c)     the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d)     the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; and

(e)     the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Cooper v. Patel,* 578 S.W.3d 40, 46 (Tenn. Ct. App. 2018) (quoting factors as stated in *Adams TV of Memphis, Inc. v. ComCorp of Tenn., Inc.,* 969 S.W.2d 917, 921 (Tenn. Ct. App. 1997)).

In the present case, it is undisputed that the Agreement constituted a valid, enforceable contract and that both parties, at different points in time, failed to perform certain contractual obligations as delineated in the Agreement. Therefore, the resolution of this issue turns on whose nonperformance constituted the first <u>material</u> breach of the Agreement. After applying the material breach factors delineated above, the trial court concluded that Mr. Kinsler had committed the first and only material breach when he failed to close on the sale of the Property. Upon review, we agree with the trial court's determination.

With respect to Mr. Barrentine's duty to provide proof of funds, the Agreement provided:

Buyer's obligation to Close shall not be subject to any financial contingency. Buyer reserves the right to obtain a loan. Buyer will furnish proof of available funds to close in the following manner: Equity Line on current home (e.g. bank statement, Lender's commitment letter) within five (5) days after Binding Agreement Date. Should Buyer fail to do so, Seller may make written demand for compliance via the Notification form or equivalent written notice. If Buyer does not furnish Seller with the requested notice within two (2) days after such demand for compliance, Buyer shall be considered in default and Seller's obligation to sell is terminated. Failure to Close due to lack of funds shall be considered default by Buyer.

According to Mr. Kinsler, Mr. Barrentine materially breached the Agreement when he failed to provide sufficient proof of funds within the five-day period after the Agreement's effective date. The record demonstrates that the Agreement was executed on February 15, 2021. The evidence introduced at trial further demonstrated that Mr. Barrentine provided proof of funds on February 19, 2021, after receiving a request that

same day from Ms. Dabe, Mr. Kinsler's real estate agent.[3] This proof was in the form of a screenshot from Mr. Barrentine's cellular phone banking application, which showed the last four digits of an account number and the availability of sufficient funds in the account but failed to identify Mr. Barrentine as the account's owner. Although the Agreement required the proof to be consistent with a bank statement, Mr. Barrentine testified that he believed, based on Ms. Dabe's response via telephone, that the proof he had sent was sufficient. Mr. Barrentine further testified that it was not until Ms. Dabe subsequently contacted him on March 10, 2021, requesting additional sufficient proof, that he became aware that a more specific form of proof was required.

After Ms. Dabe contacted Mr. Barrentine on March 10, 2021, regarding the insufficiency of the proof of funds, Mr. Barrentine complied that same day. He sent another photo, this time of a check confirming that the last four digits of the account number previously shown in the screenshot were from an account that belonged to him personally. Ms. Dabe then requested a bank letter, which Mr. Barrentine attempted to immediately obtain. After being informed by his bank that such letters were no longer available, Mr. Barrentine obtained a bank statement for March 2021 showing all of the required information, including proof that he owned the account and that the account contained the required funds. He provided this information to Ms. Dabe the same day, which was within the two-day request window specified in the Agreement. Ms. Dabe again confirmed that this information was sufficient.

Because Ms. Dabe was not available to testify at trial, the parties stipulated to the introduction of her deposition as evidence. In her deposition, Ms. Dabe stated that she asked Mr. Barrentine to present proof of funds on February 19, 2021, and that he provided her with a screenshot. She further testified that it was only when she began preparing the paperwork for the closing that she enlarged the screenshot and realized more information was required. Ms. Dabe confirmed that she accepted the subsequent proof of funds offered by Mr. Barrentine on March 10, 2021, on behalf of Mr. Kinsler.

Accordingly, although Mr. Barrentine arguably did not provide sufficient proof of funds within five days of the Agreement's execution, given that the screenshot evincing the existence of the funds in an account did not demonstrate his ownership of the account,

---

[3] Mr. Kinsler testified that Ms. Dabe was his agent at all times during this transaction. Moreover, Mr. Kinsler and Ms. Dabe signed a listing agreement and confirmation of agency status form, wherein Mr. Kinsler designated Ms. Dabe as his agent. Agency is a fiduciary relationship, "which results from the manifestation of consent by one person to another that the other shall act on his behalf, and subject to his control, and consent by the other so to act." *Henderson v. Ford*, 488 S.W.2d 720, 722 (Tenn. 1972); *see Harvey ex rel. Gladden v. Cumberland Tr. & Inv. Co.*, 532 S.W.3d 243, 266 (Tenn. 2017) (stating that "an agent represents and acts for his principal"). "The existence of an agency is determined by the actual relationships and deeds of the parties." *Elec. Power Bd. of Metro. Gov't of Nashville and Davidson Cnty. v. Woods*, 558 S.W.2d 821, 824 (Tenn. 1977). Based on the record before us, we determine that Ms. Dabe was undisputedly Mr. Kinsler's agent throughout the transaction.

he did provide sufficient proof of funds within two days of Ms. Dabe's subsequent request. Ms. Dabe was Mr. Kinsler's agent and acted on his behalf in making a demand for compliance with this requirement of the Agreement. The Agreement contemplated that Mr. Barrentine would have the opportunity to cure this issue by providing sufficient proof within two days of the seller's request. Moreover, a very short delay in performance that does not interfere with the other party's ability to perform is generally not a material breach. *See, e.g., Fitness & Ready Meals LLC v. Eat Well Nashville*, No. M2021-00105-COA-R3-CV, 2022 WL 601073, at \*4 (Tenn. Ct. App. Mar. 1, 2022); *Se. Diamond Jubilee Investments, LLC v. Uma Shiv, Inc.*, No. E2019-02141-COA-R3-CV, 2020 WL 7024373, at \*17 (Tenn. Ct. App. Nov. 30, 2020).

Ergo, any breach by Mr. Barrentine by reason of his initial failure to provide proof of funds sufficient to comply with the Agreement's requirements was non-material, as the trial court found, because it did not interfere with Mr. Kinsler's ability to timely perform. Furthermore, this non-material breach was cured by Mr. Barrentine's compliance with Ms. Dabe's request within the two-day timeframe established in the Agreement. Mr. Kinsler was not deprived of any benefit, and Mr. Barrentine's actions comported with standards of good faith and fair dealing. *See Cooper*, 578 S.W.3d at 46.

During trial, Mr. Kinsler testified that as of February 20, 2021, he was willing to go through with the transaction if he received sufficient proof by February 23, 2021. Mr. Kinsler also testified that Ms. Dabe never forwarded the proof of funds to him and that he was unaware of Mr. Barrentine's compliance. However, as Mr. Kinsler's agent, Ms. Dabe acted on Mr. Kinsler's behalf when she (1) approved the initial proof of funds and (2) triggered the two-day cure period by requesting sufficient proof of funds. For the foregoing reasons, any breach by Mr. Barrentine was not material and was cured when he delivered sufficient proof of funds within the two-day window provided by the Agreement. Inasmuch as the trial court's findings concerning Mr. Barrentine's compliance with the proof-of-funds requirement are supported by a preponderance of the evidence, we conclude that the trial court properly found that Mr. Barrentine did not materially breach the Agreement.

We determine that because Mr. Barrentine did not commit the first material breach of the Agreement, Mr. Kinsler was not excused from performing his contractual obligations. *See M & M Elec. Contractor, Inc.*, 529 S.W.3d at 423. Accordingly, the trial court correctly determined that Mr. Kinsler committed the first material breach of the Agreement by failing to close on the sale of the Property. We therefore affirm the trial court's findings and conclusions with respect to the Agreement in their entirety.

### B. Mr. Barrentine's Request for Attorney's Fees on Appeal

In responding to this appeal, Mr. Barrentine posits that he is owed attorney's fees on appeal as provided for in the Agreement. In considering claims for attorney's fees,

Tennessee courts adhere to the "American rule," which instructs that "a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case." *Cracker Barrel Old Country Store, Inc.*, 284 S.W.3d at 308. In the instant action, the parties' Agreement contains a fee-shifting provision, which states:

> In the event that any party hereto shall file suit for breach or enforcement of this Agreement (including suits filed after Closing which are based on or related to the Agreement), the prevailing party shall be entitled to recover all costs of such enforcement, including reasonable attorney's fees.

Accordingly, because the Agreement provides for such, Mr. Barrentine is entitled to his reasonable attorney's fees and costs associated with this appeal. We therefore grant Mr. Barrentine's request, and we remand this issue to the trial court for determination of an appropriate and reasonable amount of attorney's fees incurred by Mr. Barrentine in responding to this appeal.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's judgment in all respects and grant Mr. Barrentine's request for an award of reasonable attorney's fees on appeal. We remand this case to the trial court for enforcement of the judgment, collection of costs below, and a determination of Mr. Barrentine's reasonable appellate attorney's fees and costs consistent with this opinion. Costs on appeal are assessed to the appellant, Jimmy J. Kinsler.

s/ Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE

- 9 -